**No. 24-2947**

---

United States Court of Appeals
For the Seventh Circuit

---

JOHNNIE L. SAVORY,
*Plaintiff-Appellee*

v.

ALLEN ANDREWS, et al.,
*Defendants-Appellants*

---

On appeal from judgment of the
United States District Court for the Central District of Illinois
Case No. 1:23-cv-01184

The Honorable Colleen R. Lawless

---

# BRIEF FOR AMICI CURIAE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AND ILLINOIS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF PLAINTIFF-APPELLEE'S PETITION FOR REHEARING

---

Sarah O. Schrup
*Vice Chair*, *Amicus Curiae Committee*
NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS
1660 L. Street, N.W. #12
Washington, DC 20005

Jonathan M. Brayman
*Chair, Amicus Curiae Committee*
ILLINOIS ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS
Breen & Pugh
53 West Jackson Boulevard, #1550
Chicago, Illinois 60604

Elizabeth N. Mazur
*Counsel of Record for Amici NACDL and IACDL*
Hughes Socol Piers Resnick & Dym, Ltd
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100

Save As | Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2947

Short Caption: Savory v. Andrews, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

National Association of Criminal Defense Lawyers

Illinois Association of Criminal Defense Lawyers

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hughes Socol Piers Resnick & Dym

Breen & Pugh

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Elizabeth Mazur Date: 9/3/2026

Attorney's Printed Name: Elizabeth Mazur

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Hughes Socol Piers Resnick & Dym, Ltd

70 W. Madison, Suite 4000, Chicago, IL 60602

Phone Number: 312.604.2726 Fax Number: 312.604.2726

E-Mail Address: emazur@hsplegal.com

Save As | Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2947

Short Caption: Savory v. Andrews, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

National Association of Criminal Defense Lawyers

Illinois Association of Criminal Defense Lawyers

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hughes Socol Piers Resnick & Dym

Breen & Pugh

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Jonathan M. Brayman Date: 9/3/2026

Attorney's Printed Name: Jonathan M. Brayman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Breen & Pugh

53 West Jackson Boulevard, #1550, Chicago, Illinois 60604

Phone Number: (312) 360-1001 Fax Number: (312) 362-9907

E-Mail Address: jbrayman@breenpughlaw.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2947

Short Caption: Savory v. Andrews et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amicus National Association of Criminal Defense Lawyers

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Appellate Advisory LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s/ Sarah Schrup Date: 09/02/26

Attorney's Printed Name: Sarah Schrup

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 3023 N. Clark Street, Unit 126

Chicago, IL 60657

Phone Number: 312-219-4959 Fax Number: n/a

E-Mail Address: sarahschrup@appellateadvisory.com

## TABLE OF CONTENTS

STATEMENT OF INTEREST ........................................................................... 1

STATEMENT PURSUANT TO FED. R. APP. P. 29(A)(4)(E) ..................................... 2

SUMMARY OF THE ARGUMENT ................................................................... 3

ARGUMENT ......................................................................................... 3

I. The Panel's Holding Does Not Appreciate the Way Police Reports Are Used and Relied On in Criminal Legal Practice .................................... 3

A. Police Reports Shape Nearly All Aspects of Criminal Trial Preparation ........................................................................ 3

B. Although Police Reports Are Generally Inadmissible, They Influence Witness Testimony Significantly................................. 5

C. Fabricated Police Reports Undermine the Fairness of Criminal Proceedings Even When Not Admitted at Trial........................ 11

II. The Panel's Holding Undermines Due Process Because It Incentivizes False Evidence in Criminal Proceedings............................................. 10

CONCLUSION ...................................................................................... 10

CERTIFICATE OF COMPLIANCE.................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Glossip v. Oklahoma*,
604 U.S. 226 (2025) .......... 10

*Mooney v. Holohan*,
294 U.S. 103 (1935) .......... 10

*Napue v. People of State of Illinois*,
360 U.S. 264 (1959) .......... 10

*Pyle v. State of Kansas*,
317 U.S. 213 (1942) .......... 10

*Savory v. Andrews*,
No. 24-2947, 2026 WL 2364361 (7th Cir. Aug. 14, 2026) .......... 8

*United States v. Johnson*,
437 F.3d 665 (7th Cir. 2006) .......... 9

*United States v. Muhammad*,
120 F.3d 688 (7th Cir. 1997) .......... 6

*United States v. Rappy*,
157 F.2d 964 (2d Cir. 1946) .......... 6

*United States v. Riccardi*,
174 F.2d 883 (3d Cir. 1949) .......... 6

**Rules**

Fed. R. Evid. 612 .......... 6

Fed. R. Evid. 801(d)(1)(C) .......... 8

Fed. R. Evid. 801(d)(2)(A) .......... 7

**Other Authorities**

Anthony Bandiero, BULLETPROOF REPORT WRITING: A FIELD GUIDE FOR LAW ENFORCEMENT (7th ed. 2026) .......... 4

Christopher Claus, *Seven Speedy Tips for Testimony*, POLICE CHIEF MAGAZINE (Nov. 1, 2023)........................................................................................ 5-6

Russell D. Covey, *Recantations and the Perjury Sword*, 79 ALB. L. REV. 861 (2016)........................................................................................ 9

## STATEMENT OF INTEREST

Pursuant to Fed. R. App. P. 29(b)(2), the National Association of Criminal Defense Lawyers and the Illinois Association of Criminal Defense Lawyers move for leave to file a brief as amici curiae in support of Plaintiff-Appellee Johnnie L. Savory's petition for rehearing.

The National Association of Criminal Defense Lawyers ("NACDL") and the Illinois Association of Criminal Defense Lawyers ("IACDL") represent thousands of advocates across the United States who are committed to advancing the interests and protecting the rights of individuals accused of crimes.

NACDL is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. It has a nationwide membership of many thousands of direct members, and up to 40,000 with affiliates. NACDL's members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defenders and private criminal defense lawyers. NACDL is dedicated to advancing the proper, efficient, and fair administration of justice. NACDL files numerous amicus briefs each year in the Supreme Court of the United States and in other federal and state courts in cases that present issues of broad importance to the criminally accused, criminal defense lawyers, and the criminal legal system.

IACDL is a nonprofit organization dedicated to defending the rights of all individuals as guaranteed by the United States Constitution and the Constitution of the State of Illinois. The organization's membership includes private criminal defense attorneys, public defenders, and law professors throughout the State of Illinois. IACDL's mission is to serve as a leader, alongside diverse coalitions, in identifying and reforming flaws and inequities in the criminal legal system, redressing systemic racism, and ensuring its members and others in the criminal defense bar are fully equipped to serve all accused persons at the highest level. IACDL is committed to enhancing the criminal defense bar's capacity to safeguard fundamental constitutional rights. It is an affiliate organization of NACDL.

This case directly implicates core concerns of amici: the fairness of the criminal legal system and trials. Amici have filed numerous amicus briefs before the Supreme Court of the United States and in the courts of appeals regarding the constitutional rights of the criminally accused and the right to due process and fair legal proceedings. Courts and judges routinely cite and rely on those briefs to resolve important legal issues in American criminal law.

## STATEMENT PURSUANT TO FED. R. APP. P. 29(A)(4)(E)

Amici represent that: (1) no counsel for a party authored this brief in whole or in part; (2) no such counsel or party made a monetary contribution to fund the preparation or submission of the brief; and (3) no person other than amici curiae, its members, or its counsel made such a contribution.

## SUMMARY OF THE ARGUMENT

The panel holds that fabricated information in police reports does not violate a criminal defendant's right to due process unless those police reports are themselves admitted at trial (as opposed to police officers merely testifying consistently with those reports). *See Savory v. Andrews*, No. 24-2947, 2026 WL 2364361, at *8 (7th Cir. Aug. 14, 2026). The panel's decision fails to appreciate the critical role that police reports play in criminal legal practice and disregards the many ways fabricated reports undermine the fairness of trials. In addition, the panel's holding incentivizes officers who fabricate reports to immunize themselves from liability by repeating those false statements under oath in court, a result that undermines the most basic principles of criminal due process.

## ARGUMENT

### I. The Panel's Holding Does Not Appreciate the Way Police Reports Are Used and Relied On in Criminal Legal Practice.

Police reports are crucially important to criminal legal practice, yet they are almost never introduced as evidence at trial.

#### A. Police Reports Shape Nearly All Aspects of Criminal Trial Preparation.

Police reports are meant to document facts gathered by government officials during an investigation. Reports are tendered during pretrial discovery, and those reports tell prosecutors and defense attorneys what evidence is available to prove the prosecution's case at trial. They are the blueprint for the government's case-in-chief, and the foundation upon which criminal defense attorneys develop trial strategy.

Police reports have an enormous impact on how criminal cases are investigated, litigated, and tried.

Police reports frequently document an officer's own personal observations during law enforcement activities. These reports form the basis of the officer's direct examination in court. For example, an arresting officer's report documents the exact time and location the officer encountered the arrestee and facts that gave the officer probable cause for the arrest. Where probable cause is based on the officer's personal observation, the officer often includes details about sightlines and lighting conditions to establish that the officer saw what he said he saw.

Police officers are trained to draft these reports with future testimony and legal outcomes in mind. *See* Anthony Bandiero, *Bulletproof Report Writing: A Field Guide For Law Enforcement* 8 (7th ed. 2026) (four goals of police report writing are: preventing suppression motions, promoting guilty pleas, aiding the prosecution, and assisting officer recall at trial). When reviewing these reports, defense attorneys safely assume that police officers will testify consistent with their reports.

Police officers also document statements that non-police witnesses (including crime victims) make to investigators. Defense attorneys rely on these reports to anticipate the witness's in-court testimony. Although defense attorneys can try to independently locate and interview witnesses, those efforts often do not bear fruit. No witness is obligated to speak to a defense investigator, and witnesses who have already cooperated with a police investigation might feel aligned with law enforcement and therefore reluctant to cooperate with defense investigators. This is

especially true for crime victims and witnesses who empathize with them; they are reluctant to "help" the defendant in any way. Few jurisdictions afford criminal defendants the right to pretrial discovery depositions of criminal trial witnesses, leaving defense attorneys with no way to independently obtain a witness statement.

Under these circumstances, a defense attorney must presume that the witness will testify consistently with the statement attributed to him in the report. After all, the report is what the prosecutor will use to prepare the witness to testify, and if the witness's testimony deviates from the report, the prosecution will likely call the reporting officer to impeach the witness. In other words, the defense attorney must prepare trial strategy around what is contained within the reports.

### B. Although Police Reports Are Generally Inadmissible, They Influence Witness Testimony Significantly.

In general, police reports are inadmissible hearsay in criminal trials and thus never made part of the trial record. Nevertheless, the content of police reports plays a significant role in shaping witness testimony.

It is impossible for police officers to remember everything they do. Criminal cases can take months or even years to reach trial. An officer might conduct hundreds of arrests or interviews between the time he writes a report and when he testifies about the underlying incident in court. It is widely understood and accepted by prosecutors, defense attorneys, and criminal trial court judges that officers "refresh their memories" with all police reports prior to testifying. Indeed, police officers are specifically trained to do just that. *See* Christopher Claus, *Seven Speedy Tips For Testimony*, POLICE CHIEF (Nov. 1, 2023), https://www.policechiefmagazine.org/7-

speedy-tips-testimony/. ("It is obvious that a basic step to being prepared is to pull and read your own report in a case before testifying. Less obvious is reading the reports other officers may have filed. You cannot generally testify as to facts in other reports at trial, but knowing where your report and the information you gathered fit into the larger police investigation is important as it gives you some context as to what the case is about and how your testimony fits in.").

In the event an officer cannot recall something in his report while on the stand testifying, the Federal Rules of Evidence permit the officer to consult his report to "refresh" his memory. Fed. R. Evid. 612. This is allowed even if the testifying officer did not personally author the report. *See e.g.*, *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) (no error where FBI agent consulted another agent's report to refresh memory of an interview with defendant); *cf. United States v. Riccardi*, 174 F.2d 883, 888 (3d Cir. 1949) ("When a party uses an earlier statement of his own witness to refresh the witness' memory, the only evidence recognized as such is the testimony so refreshed . . . Anything may in fact revive a memory; a song, a scent, a photograph, and allusion, even a past statement known to be false," quoting *United States v. Rappy*, 157 F.2d 964, 967 (2d Cir. 1946)).

For example, Officers A, B, and C encounter Mr. Jones on the street and conduct a *Terry* stop. During the stop, Officer A pats down Mr. Jones and allegedly finds a bag of drugs in Mr. Jones's pocket. Officers A, B, and C then arrest Mr. Jones for possession of a controlled substance. Officer A subsequently writes reports

documenting the stop, pat down, alleged discovery of drugs, arrest, and presence of Officers B and C on-scene. The reports list Officers A, B, and C as arresting officers.

One year later, Mr. Jones goes on trial for possession of a controlled substance. Officer A has taken a new job out of state, so the prosecutor subpoenas Officer B to testify. Officer B does not independently recall the details of Mr. Jones's arrest. Prior to testifying, Officer B reviews Officer A's report to refresh his memory. Likewise, the prosecutor uses Officer A's report to prepare Officer B's direct examination, and the defense attorney uses Officer A's report to prepare his cross-examination of Officer B. Officer B testifies about the interaction consistent with Officer A's report. Officer A's report is never admitted into evidence because it is hearsay, but its contents become the trial narrative.

All types of police reports similarly become trial narrative. For example, if a suspect makes an inculpatory statement in the presence of an officer, the officer documents the statement in a report. The case takes two years to reach trial. At trial, the prosecution calls the officer to testify about the inculpatory statement, *see* Fed. R. Evid. 801(d)(2)(A). Although the officer likely does recall the details of the statement, he reviews the report prior to testifying, which allows him to repeat on the stand the statement attributed to the defendant in the report. The report itself is inadmissible hearsay, but the contents come into evidence through the officer's testimony. Likewise, detectives who secure an eyewitness lineup identification create a report documenting the time, place, manner, and outcome of the lineup. At trial, the officer testifies to the facts and circumstances surrounding the identification, *see*

Fed. R. Evid. 801(d)(1)(C), using the report to refresh his memory, without the lineup report itself being admitted into evidence.

### C. Fabricated Police Reports Undermine the Fairness of Criminal Proceedings Even When Not Admitted at Trial.

Police reports that contain fabricated evidence (*i.e.*, evidence that tends to implicate the suspect/defendant that the officer knows is not true) can have an enormously negative impact on the fairness of criminal proceedings, even when those reports are not admitted as evidence.

An example: Mr. Witness gets a quick look at someone running from the scene of an armed robbery. That day, a detective interviews Mr. Witness and writes a report. The detective already has a strong hunch about who committed the crime, and so when he writes a summary of Mr. Witness's account in his report, he fudges details to make Mr. Witness's account match his suspect.

Two years later, the suspect is on trial for armed robbery. Prosecutors subpoena Mr. Witness to prepare him to testify. Mr. Witness has scant memory of the incident, which was not a significant event in his life. Mr. Witness did not take notes during his police interview, nor has he spent any time in the past two years thinking about what he observed or what he said to police. During the meeting, the prosecutor relies on the detective's fabricated report to prepare Mr. Witness. The prosecutor assumes the detective truthfully reported what Mr. Witness said on the day of the crime. Mr. Witness assumes that whatever the police wrote down must have been

what he said about what he saw. The fabricated report inevitably becomes Mr. Witness's testimony.[1]

In addition to encouraging false testimony, fabricated police reports make trials unfair by making favorable evidence unavailable to a defendant. Suppose a criminal suspect is being interrogated and maintains his innocence. During interrogation, the suspect tells detectives that he was with his sister at the time of the offense. Detectives then go and locate the defendant's sister, interview her, and write a report. The report includes a false account of what the sister said, and that false account torches the defendant's alibi defense. The defendant and his attorney know that the statement detectives attributed to his sister is false. However, if they call defendant's sister to testify, the prosecution will call the detective to impeach her. In closing, the prosecution might argue that defendant and his sister concocted a false alibi, which will be extremely prejudicial to the defendant. Faced with that possibility, a defendant might abandon his alibi defense altogether. Even though the fabricated report was neither admitted nor referenced at trial, it has made the trial fundamentally unfair and prevented the accused from presenting a defense.

---

[1] Even if Mr. Witness is inclined to push back on the police account and testify contrary to it, the prosecution has enormous power to coerce witness testimony that it considers to be the truth. *See United States v. Johnson*, 437 F.3d 665, 678 (7th Cir. 2006) (government may "inform" a witness who changes accounts that she is the target of a criminal investigation for doing so and "warn" her about the dangers of testifying); *see also* Russell D. Covey, *Recantations and the Perjury Sword*, 79 ALB. L. REV. 861, 862 (2016) (discussing how the "credible threat by police and prosecutors to bring perjury charges against witnesses who wish to recant prior statements [] can itself be used to induce false witness testimony.").

## II. The Panel's Holding Undermines Due Process Because It Incentivizes False Evidence in Criminal Proceedings.

The panel holding sets forth a new rule with catastrophic consequences. Under the panel rule, an officer who fabricates evidence in reports immunizes himself from liability for the pretrial fabrication by repeating the fabrication under oath at trial. This rule encourages *more* false testimony in criminal proceedings, not less.

A bedrock principle of criminal due process is that the prosecution may not knowingly use false evidence to obtain a conviction. *See Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025); *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959); *Pyle v. State of Kansas*, 317 U.S. 213, 216 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935). The panel holding is inconsistent with this basic principle. It encourages police officers who fabricate evidence in reports to take the stand and repeat their lies under oath.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff-Appellee Johnnie L. Savory's petition for rehearing and rehearing *en banc*.

Respectfully submitted,

*/s/ Elizabeth Mazur*
Elizabeth N. Mazur
*Counsel of Record for Amici NACDL and IACDL*
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100
emazur@hsplegal.com

*/s/ Jonathan M. Brayman*
Jonathan M. Brayman
*Chair, Amicus Curiae Committee*
ILLINOIS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
Breen & Pugh
53 West Jackson Boulevard, #1550
Chicago, Illinois 60604
(312) 360-1001
jbrayman@breenpughlaw.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) and 32(a)(7) because it contains 2553 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and as measured by Microsoft Word's word-count feature.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A), as modified by Cir. R. 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6) because it is prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Date: September 4, 2026

/s/ *Elizabeth Mazur*
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100
emazur@hsplegal.com